UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NANCY F. SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1240** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY** | **SECTION "I" (3)** |

REPORT AND RECOMMENDATION

Plaintiff Nancy F. Smith filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claims for a period of disability, disabled widow's benefits, disability insurance benefits ("DIB"), and supplemental security income payments ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.  BACKGROUND

On April 1, 2019, Nancy F. Smith ("Plaintiff") filed a Title II application for DIB and Title XVI application for SSI, alleging disability beginning December 15, 2012. (Rec. Doc. No. 13, p. 379). On May 10, 2019, Plaintiff also filed a Title II application for disabled widow's benefits. *Id*. Her claims were initially denied on December 23, 2019, and again upon reconsideration on March 12, 2020. *Id*. Plaintiff requested a hearing, which was held on September 24, 2020, before an administrative law judge ("ALJ"). *Id*. The ALJ issued an unfavorable decision finding that Plaintiff was not disabled from December 15, 2012, through October 23, 2020, the date of the decision. *Id*.

at 397.

The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4) (i)-(v). At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 15, 2012, her alleged onset date. (Rec. Doc. No. 13, p. 382). At the second step, the ALJ found the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia, and obesity. *Id*. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 387.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she can "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. [She] must avoid workplace hazards. [She] can frequently rotate her neck from side to side. She can occasionally use foot pedals bilaterally. She can frequently handle bilaterally and occasionally reach overhead bilaterally. She can frequently reach in all directions bilaterally." (Rec. Doc. No. 13, p. 388).

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work *Id*. at 395. Finally, at step five, the ALJ concluded, with the help of a vocational expert, that considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 396. Accordingly, the ALJ found that Plaintiff was not under a "disability" as defined in the Act from December 15, 2012, through October 23, 2020. *Id*. at 397.

On April 27, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's unfavorable decision the final decision of the Commissioner. (Rec. Doc. No. 16-2, p. 2) Plaintiff filed the present action to challenge that decision pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

Although a reviewing court must review the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive, and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)

3

(per curiam)); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). If this duty is not satisfied, the decision that results is not supported by substantial evidence. *See id*. However, the Court does not expect procedural perfection from the ALJ and will reverse as not supported by substantial evidence only if the failure to develop the record prejudiced the plaintiff. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). In other words, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

### III.  ENTITLEMENT TO BENEFITS UNDER THE ACT

To be entitled to social security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). A claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501-404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In evaluating a disability claim, the Commissioner utilizes the five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social

security regulations; (4) the impairment prevents the claimant from doing pasts relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove he has a disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his initial burden, the burden shifts to the Commissioner at step five to show that the claimant can perform other gainful employment in the national economy. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity" (RFC), given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).

5

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). The Commissioner, rather than the courts, must resolve conflicts in the evidence. *Id*.

## IV. ISSUES ON APPEAL

1. Whether the ALJ committed legal error in determining that Plaintiff's mental impairment was not severe under Step Two and whether the subsequent RFC determination includes an analysis of all Plaintiff's work-related limitations.
2. Whether the appointment of Andrew Saul violated separation of powers and rendered the decisions in this case by the ALJ and Appeals Council judges, who derive their authority from Saul, constitutionally defective.

## V. ANALYSIS

**1. Whether the ALJ committed legal error in determining that Plaintiff's mental impairment was not severe under Step Two and whether the subsequent RFC determination includes an analysis of all Plaintiff's work-related limitations**

Plaintiff argues that the Fifth Circuit, in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), held that the threshold requirement for finding an impairment to be severe is *de minimis*. (Rec. Doc. No. 16-2, p. 5). Plaintiff contends that her depressive disorder is a severe impairment meeting the *de minimis* standard, pointing to medical evidence in the record that includes limitations in mental functioning. *Id*. at 8-10. Plaintiff states, "every medical opinion and State Agency administrative medical finding … demonstrates that the *de minimis* standard is met." *Id*. at 12. Plaintiff also contends that the ALJ failed to include her mental impairments in the RFC determination, which is required for all impairments, even those that are not severe. *Id*. at 6.

The Commissioner argues that the ALJ considered the record as a whole in reaching the RFC determination, that the RFC is based on substantial evidence, and that the decision is rooted in the record and includes a detailed analysis. (Rec. Doc. No. 18-1, p. 5). The Commissioner further

notes that the ALJ properly determined that Plaintiff's mental health did not pose functional limitations, as "the record shows that Plaintiff's alleged mental health issues were none-to-mild." *Id.*

### a. Step Two Analysis

To evaluate whether a Plaintiff's medical condition qualifies as a "severe impairment" at step two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf.* 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities include physical functions (e.g., walking, standing, sitting lifting); understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit has established the following standard for determining whether an impairment is severe: an impairment is not severe only when it is a "slight abnormality" having "*such minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added). While a case may not be remanded simply because the ALJ did not use "magic words" indicating he reviewed severity pursuant to the *Stone* standard, remand is required where there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308,

7

1311 (5th Cir. 1986). In *Loza v. Apfel*, the Fifth Circuit stated that the ALJ failed to correctly apply the *Stone* standard where the ALJ determined that the claimant was "slightly restricted by his mental impairment in his activities *of daily living*." 219 F.3d 378, 392 (5th Cir. 2000) (emphasis added). The Court stated, "the ALJ did not apply the correct standard as set forth in *Stone*, which held that an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to *work*… The ALJ erroneously applied his own standard involving a slight restriction in 'activities of daily living' instead of this court's standard." *Id*. (emphasis in original).

Here, the ALJ does not explicitly reference the *Stone* decision. However, he states, "An impairment of combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work," and cites to Social Security Ruling 85-28, which explicitly embraces the Fifth Circuit's definition for determining whether an impairment is severe. (Rec. Doc. No. 13, p. 381) (citing SSR 85-28). Accordingly, the ALJ applied the correct legal standard to determine whether Plaintiff's depression was a severe impairment. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *Andrews v. Astrue*, 917 F.Supp.2d 624, 633 (N.D. Tex. 2013).

Finding the ALJ applied the correct standard, the Court now must decide whether the determination that Plaintiff's depression was not severe is supported by substantial evidence. At step two, the ALJ dedicated four pages to evaluating the evidence of Plaintiff's mental impairments. (Rec. Doc. No. 13, pp. 383-86). The ALJ began by stating that the medically determinable mental impairment of depressive disorder did not cause more than minimal limitations in her ability to perform basic work activities. *Id*. at 383. "The claimant's evidence

notes that she was prescribed antidepressant medications from her primary care provider. She was generally noted to have normal mood and affect at most of her appointment[s]." *Id*. The ALJ then reviewed the medical evidence, beginning with the psychological consultative examination by Cicily Prestridge, Ph.D., conducted on October 26, 2019:

> Concerning her present functioning, the claimant stated she cared for her parents, completed household chores, and visited with her grandchildren on the weekends. She washed laundry and completed household chores… She could shop for groceries and pay bills. She attended church. She had a large family and they visited her regularly. Her social relationships appeared appropriate. The claimant's attention and focus were poor. Her attitude was cooperative. She was able to understand simple and multi-step directions. The claimant's expressive language often contained malapropisms or incorrect word usage. Her thought process was normal. Her level of intelligence was estimated to be within the low average range of abilities. (Ex. C4f/3). The claimant was assessed with mild depressive disorder and mild cannabis use disorder. Dr. Prestridge noted that the claimant appeared to be experiencing some memory issues and mental confusion. However, the claimant also admitted to actively using marijuana, noting her substance use could affect her memory. Dr. Prestridge stated that the claimant appeared to have health (physical) issues, which 'may be more a factor for overall functioning than mental health issues.' Dr. Prestridge opined that the claimant was able to understand and follow simple directions. Focus and attention were difficult to maintain and multi-step directions would likely be more difficult. She displayed difficulty for focus and attention and had much difficulty remaining focused within a topic. She would likely have difficulty performing simple, repetitive tasks. The claimant had appropriate social relationships with others. Claimant would likely be able to tolerate stress and/or pressures, related to mental health functioning… The consultative examiner provided an opinion suggesting significant mental limitations despite the claimant's having little to no mental health treatment during the relevant period. The undersigned further notes that Dr. Prestridge's report indicated that the claimant was actively using marijuana, further suggesting that marijuana use could affect the claimant's memory. Treating notes from Leonard Chabert Medical Center indicated however, that her memory was intact and her mood and affect was normal.

(Rec. Doc. No. 13, p. 384). The ALJ ultimately was unpersuaded by Dr. Prestridge's opinion to the extent that it was inconsistent with the evidence as a whole. Two days later, the Plaintiff underwent a second psychological examination by Daphnie Vilcan, LPC:

> The claimant reported she got depressed because she could not do the things she used to do… She stated she was admitted for inpatient psychological treatment for 'panic-type' symptoms in 2013. She stated she saw a counselor for a few months but stopped going because she did not want to take medications… She reported that she 'smoked pot' daily for her pain and 'emotional stuff.' She reported not having any problems socially. She

9

> stated she had trouble following directions. If she gets too angry or stressed, she smoked marijuana and it calmed her down. The claimant was neatly dressed and her gait was normal. Her energy level appeared normal. She was talkative and cooperative. She smiled and engaged frequently. Her speech was fast paced and abundant. Her thought process was logical, relevant, and coherent. She reported hallucinations but could not provide a description of the 'things' she heard or saw. She appeared to be in a joyful mood. She remembered three words immediately and one word after a delay. She required some redirection. Dr. Vilcan opined that the claimant appeared to have a basic level of understanding as evidenced by interviewer having to clarify/explain some questions to her during the interview. Her memory appeared to be poor as evidenced by her performance on the memory test and on some questions, and she forgot to bring medications and supporting paperwork. The claimant may be able to do some type of repetitive work that requires little memory. The claimant has difficulty sustaining concentration as evidenced by her drifting off into other conversation during the interview. The claimant would likely not function well in a work environment that is demanding of concentration. The claimant would not be expected to be persistent at work-related activities considering her medical issues and lack of concentration. The claimant would not likely be able to function at a reasonable pace due to both physical limitations and longer processing time displayed during the interview. The claimant would be expected to thrive concerning getting along with others, as she is friendly, outgoing, and talkative. The claimant did not report or display any limitations with adaptability. Considering the claimant's self-report, she appeared to be resilient. (Ex C5F/7). In her conclusions, Dr. Vilcan noted that the claimant's 'occasional depressive symptoms' appeared to be related to limitations caused by her medical conditions. She also noted that the claimant's marijuana use may also contribute to her depressive symptoms.

(Rec. Doc. No. 13, pp. 384-85). Importantly, the ALJ notes that Dr. Vilcan did not diagnose Plaintiff with any specific mental health problem, but only referenced "some depressive *symptoms*." *Id*. at 385 (emphasis in original). Like Dr. Prestridge's opinion, the opinion of Dr. Vilcam conflicted with Plaintiff's treatment notes from Leonard Chabert Medical Center that her memory was intact, and her mood and affect were normal. *Id*.

Lynette Causey, Ph.D., determined that Plaintiff had a "severe mental impairment of depressive disorder," and the ALJ outlined her findings as follows:

> Dr. Causey further determined that the claimant had moderate limitations in understanding, remembering, and applying information, and concentrating, persisting, and maintaining pace and mild limitation in interacting with others, and adapting and managing herself. (Ex. C6A). Dr. Causey opined that the claimant could understand, remember, and carry out detailed instructions, maintain concentration, and could understand short and simple instructions, locations, and work-like procedures. [T]he claimant's moderate limitations do

> not interfere with her ability to maintain socially appropriate behavior in [a] work setting nor does it seem to interfere with her ability to ask simple questions or request assistance. The claimant also seems to maintain the ability to perform activities within a schedule, maintain regular attendance and make simple work-related decisions.

(Rec. Doc. No. 13, p. 385). In sum, Dr. Causey opined that Plaintiff had a severe impairment with moderate limitations that may preclude some work experience, but with sobriety and treatment compliance, she maintains the ability to perform simple duties that are learned on the job in a short period. *Id*. The ALJ did not find this opinion persuasive, "as it notes her marijuana use might cause limitation in her function." *Id*. The ALJ again noted that this opinion was inconsistent with the claimant's treating records from Leonard Chabert Medical Center that her memory was intact and her mood and affect were normal. *Id*. Furthermore, the ALJ noted that the treating records show no specific treatment by a mental health specialist, and that the testimony and earnings record established that Plaintiff was able to work at least part time as a church secretary during the relevant period. *Id*. In addition, the ALJ noted that Plaintiff's testimony indicated that her limitations were primarily due to her *physical health*, not her mental health symptoms. *Id*.

The ALJ next determined the severity of the mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ will normally find that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.9201(d)(1). The regulations contain a presumption that if the degree of limitation is rated as none or mild in the first three functional areas and as none in the fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). This presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the Plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *see also Stone*, 752 F.2d at 1101; *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064, at *11 (N.D. Tex. Mar. 23, 2009) (concluding

11

that the ALJ's finding of nonseverity was not contrary to *Stone* "because the ALJ, in applying the special technique [set forth in the regulations for evaluating mental impairments], found mild deficits in her concentration, persistence or pace, as well as social functioning.").

In understanding, remembering, and applying information, the ALJ determined that Plaintiff had a mild limitation: "In a function report dated, September 25, 2019, she reported no problems performing personal care except she had difficulty lifting her arms and legs. The claimant stated she could prepare a simple meal and perform household chores, however, it takes longer to complete tasks." (Rec. Doc. No. 13, pp. 385-86). The ALJ further noted that she could drive, but only short distances due to her sciatica, and she was able to pay bills, count change, handle a savings account, and use a checkbook or money order. *Id*. at 386.

Regarding interacting with others, the ALJ determined that Plaintiff had no limitation: "She reported no problems getting along with others. She reported no problems getting along with authority figures and has never been fired or laid off from a job due to problems getting along with other people." *Id*. Further, the ALJ noted that Plaintiff socialized, attended birthday parties, church, and Sunday dinners, as well as explicitly stating that she had no problems getting along with family, friends, and neighbors. *Id*.

Regarding concentrating, persisting, and maintaining pace, the ALJ determined Plaintiff had a mild limitation, noting she was able to pay bills, count change, handle a savings account, and use a checkbook or money order. *Id*. Further, she reported no problems paying attention, but stated that she sometimes had trouble following instructions. *Id*.

Finally, regarding adapting and managing oneself, the ALJ determined that Plaintiff had no limitation, as she reported no problems performing personal care, except for her physical

limitations lifting arms and legs. *Id*. She stated she could prepare meals, perform household chores, drive short distances, and make trips to the store. *Id*. The limitations mentioned by Plaintiff in this area appeared primarily due to her physical pain, making tasks take longer and driving difficult. *See id*. She reported no problems getting along with authority figures, had never been fired or laid off due to problems getting along with others, and has been able to maintain part-time employment during the relevant period. *Id*.

Accordingly, the ALJ stated, "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere." *Id*. (emphasis in original). The ALJ followed the appropriate technique in this case in determining that Plaintiff's mental impairment was not severe, specifically finding that Plaintiff had mild impairment in the first and third functional area, but no impairment whatsoever in the second and fourth. Accordingly, the Court concludes that the ALJ's analysis of Plaintiff's mental impairments is sufficient under *Stone*. Further, the Court concludes that the degree of functional limitation assessed by the ALJ is supported by substantial evidence, as the ALJ specifically noted that Plaintiff has no extensive mental health history, had worked part-time throughout the relevant period with no issues, had self-reported that her issues were largely attributed to her physical, not her mental health, and that the treatment notes from the Leonard Chabert Medical Center indicated that her memory was intact and her mood and affect were normal. As outlined in detail above, the ALJ appropriately evaluated all the evidence in the record in concluding that Plaintiff's mental impairment was not severe, and those findings are

supported by substantial evidence in the record.[1]

In any event, as the Commissioner notes, the ALJ did not deny benefits on the basis of finding that Plaintiff's depression was not severe. Instead, the ALJ proceeded to steps four, where he considered all of the medical records, including allegations of depression, in determining her RFC. As a result, the ALJ's findings at step two are non-prejudicial. Even if the ALJ had found her depression to be severe, the ALJ would have proceeded to assess the entire record to determine her RFC as the ALJ did here. A purported omission by the ALJ at step two is an irrelevant claim of error if the ALJ's analysis proceeds beyond step two. *Compare Jones v. Bowen*, 829 F.2d 524, 527 n. 1 (5th Cir. 1987) (rejecting the claimant's challenge to the ALJ's severity finding at step two because the ALJ had proceeded through the full sequential evaluation process) and *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (rejecting the claimant's argument that the ALJ had employed the wrong standard to assess whether his impairment was severe because the ALJ proceeded through the full analysis and ultimately determined that the claimant could return to his past relevant work) with *Stone*, 752 F.2d at 1106 (reversing the ALJ's decision where the incorrect "severity" standard was applied at Step Two and the ALJ denied the claim on the basis that the claimant had no severe impairment); *see also Seghers v. Saul*, Civ. A. No. 20-1502, 2021 WL 2954078, at *19 (E.D. La. June 2, 2021) (determining that the ALJ's finding that Plaintiff's depression and anxiety were not severe is supported by substantial evidence, and even if not, the findings at step two are "non-prejudicial" where the ALJ proceeds to step four of the analysis).

### b. RFC Determination

---

[1] Plaintiff argues that "[i]f an ALJ intends to use substance abuse to find no severe mental impairment at step 2, she must conduct the proper analysis." (Rec. Doc. NO. 16-2, p. 11). However, the Court notes that the ALJ did not rely on Plaintiff's marijuana usage in determining her functional limitations, and to the extent it was considered, it was only in addition to substantial evidence already in the record supporting the lack of limitations.

Within this section, Plaintiff also argues that the ALJ failed to consider limitations from Plaintiff's mental impairment, regardless of whether or not it was severe, in determining her RFC. (Rec. Doc. No. 16-2, p. 6). When making an RFC determination, the ALJ considers the medical opinions in the claimant's record and the relevant evidence received, and then weighs the credibility of the evidence accordingly. 20 C.F.R. §§ 404.1520(b), 404.1527(b). When assessing the RFC, an ALJ must consider all medically determinable impairments, including those determined to be not severe. See 20 C.F.R. § 404.1545(a)(2).

Here, the ALJ clearly considered Plaintiff's mental health impairment when determining the RFC. First, the ALJ stated, "[i]n making [the RFC determination], the undersigned has considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Rec. Doc. No. 13, p. 388). The ALJ then proceeded to analyze evidence of her mental impairment:

> The claimant stated she had not received any mental health treatment besides medication. She stated she was referred for mental health treatment but stopped going because it did not help. She stated she still had depression. She stated her depression affected her ability to work as she was having crying spells. She stated Cymbalta was helping her symptoms. The claimant stated she also had problems concentrating.

(Rec. Doc. No. 13, p. 389). In addition to the evidence outlined in detail above, the ALJ also noted that Plaintiff stated she was able to handle stress and changes in routine, got along well with authority figures, could perform personal care, passed the time watching television and making baskets, and stated she could follow directions, but may sometimes need spoken instructions repeated. *Id*. at 389-90. The ALJ also noted that Plaintiff had denied anxiety or depression to a medical provider in August 2020. *Id*. at 392. The bulk of the evidence reviewed by the ALJ, and the complaints most critical to Plaintiff, all involved physical limitations, which the ALJ appropriately accounted for in the RFC. Substantial evidence supports the ALJ's determination

15

that Plaintiff did not require any further limitations due to her mental impairment.

The ALJ's decision clearly shows a consideration of the record as a whole, including any mental health evidence, and properly found that the evidence did not indicate a need for further limitations based on mental health. Plaintiff's argument invites the Court to reweigh the evidence, which it cannot do, even where there is evidence that weighs against the Commissioner's decision. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is the well-established role of the ALJ to "properly interpret[] the medical evidence to determine [plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Substantial evidence supports the ALJ's RFC determination, and accordingly, it must be affirmed.

**2. Whether the appointment of Andrew Saul violated separation of powers and rendered the decisions in this case by the ALJ and Appeals Council judges, who derive their authority from Saul, constitutionally defective**

Plaintiff contends that the appointment of Andrew Saul as a single commissioner of the SSA who is removable only for cause and serves a longer term than that of the President violates the separations of powers, thus rendering the decision in this case by an ALJ and Appeals Council who derive their authority from Andrew Saul, constitutionally defective. (Rec. Doc. No. 16-2, pp. 13-15). Accordingly, Plaintiff argues that she has been deprived of a valid administrative adjudicatory process. *Id*. at 14. In a reply brief, Plaintiff argues that she satisfies the three-part analysis used to determine if a litigant is aggrieved by such a constitutional violation under *Collins v. Yellen*, 141 S.Ct. 1761, 1789 (2021). (Rec. Doc. No. 21, p. 2). Plaintiff states that she has standing to bring the action, the statutory removal provision is unconstitutional, and that she has been injured in "numerous ways" by this violation of her constitutional rights. *Id*. at 2-3. Specifically, Plaintiff argues that her injuries are (1) not receiving a constitutionally valid hearing and adjudication from the ALJ and (2) not receiving a constitutionally valid adjudication process

16

and decision from the Appeals Council. *Id*. at 3. The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause but argues that this conclusion does not support setting aside an unfavorable SSA disability benefits determination.[2] (Rec. Doc. 18-1, p. 16). The Court therefore assumes, for purposes of this decision, that the removal provision as to the Commissioner is unconstitutional.

An unconstitutional removal provision does not automatically void every action of the agency. *See Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021); *see also Hughes v. Kijakazi*, Civ. A. No. 20-2374, 2022 WL 1256704, at *19 (E.D. La. Mar. 9, 2022) (dealing with the same exact issue of the constitutionality of decisions by the ALJ and Appeals Council under Andrew Saul). To undo an agency action, the plaintiff must show that the unconstitutional provision inflicted compensable harm. *Id*. In *Collins*, the United States Supreme Court provided some examples that would clearly meet this standard:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause for removal." Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.

*Id*. In *Collins*, the plaintiffs sought to undo certain agency action on the basis that the unconstitutional removal provision applicable to the Director of the Federal Housing Finance Agency ("FHFA") had caused harm because in the absence of the provision, the President might have removed one of the Directors who implemented the challenged agency action or the Directors might have altered their behavior in a way that could have benefitted the plaintiffs. *Id*. The Court

---

[2] The Commissioner further argues the harmless error doctrine, the *de facto* officer doctrine, and the rule of necessity in support of its opposition to this assignment of error. The Court need not address these alternative arguments, as the Court has determined remand is not appropriate on the basis of the removal provision alone.

described the question of whether the unconstitutional provision had caused harm as "less clear-cut" and held that the lower courts should resolve the parties' arguments in the first instance. *Id.*

Courts applying the *Collins* standard to the Commissioner of the SSA in the context of an appeal of a denial of Social Security benefits have found no harm that can be linked to the unconstitutional removal provision. *See, e.g., Hughes*, 2022 WL 1256704, at *20; *Dondia M.L. v. Kijakazi*, No. 2:20-CV-06497-AFM, 2022 WL 60591, at *3 (C.D. Cal. Jan. 5, 2022) (Plaintiff identifies no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. She has failed to show any connection between the unconstitutional removal clause and ALJ Gunn's decision denying her benefits. Further, nothing in the record supports the conclusion that the disability decision is in anyway traceable to Commissioner Saul.); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *7 (M.D. Pa. Dec. 31, 2021) ("Crossley cannot show how the inability to remove the Commissioner without cause might have affected any disability benefits decision, much less the decision on his specific claim."); *Carolyn M.D. v. Kijakazi*, No. 2:20-CV-06725-AFM, 2021 WL 6135322, at *12 (C.D. Cal. Dec. 28, 2021) ("Plaintiff has failed to show any connection between the unconstitutional removal clause and ALJ Carberry's decision denying her benefits. She identities no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff cannot rely upon the unconstitutional removal clause as a basis for obtaining a new hearing."); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022)

("The undersigned has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff."). These courts have required the claimant to show some connection between the unconstitutional removal clause and the decision denying benefits. *Id*.

Here, Plaintiff has not made and cannot make a showing that the removal restriction caused compensable harm, or even demonstrate a connection between the removal provision and the adverse disability decision. At most, Plaintiff argues that the ALJ who adjudicated her claim and the Appeals Council members who considered her request for review served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection, and thus, the denial of her claim *ipso facto* violates the separation of powers. This is incorrect based on the Supreme Court's recent ruling in *Collins*, clarifying that actions taken by properly appointed official are not necessarily void. *Collins*, 141 S.Ct. at 1788. Regardless of restrictions on removal, the properly appointed Commissioner had full authority to carry out the responsibilities of his office, including promulgating regulations and delegating authority pursuant to the Act. While Plaintiff suggests that actions taken by the Commissioner and those under his leadership are void or invalid due to the unconstitutional removal provisions, "*Collins* expressly rejects this view." *Boger v. Kijakazi*, No. 1:20-cv-00331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 29, 2021).

Furthermore, as noted by the Commissioner, the ALJ who decided this case was appointed by an acting Commissioner not subject to a removal provision, thereby removing the constitutional defect allegedly in play. Finally, the existence of an unconstitutional removal provision as to the head of an agency does not render the official impotent as would be the case with an unconstitutional appointment. *Collins*, 141 S. Ct. at 1787 (making clear that an unconstitutional *removal* provision is not the same as an unconstitutional *appointment* provision and holding that

the unconstitutional removal provisions did not render actions taken by the FHFA void). To obtain relief, Plaintiff cannot rely on the removal provision alone: she must show that the removal provision harmed her. *Id*. at 1788-89. Quite simply, the fact than an ALJ or the Appeals Council derived their authority from the Commissioner is not enough. Having found that Plaintiff has not established a connection between the unconstitutional provision and the adverse disability decision, the Court finds that remand is not appropriate on the basis of the removal provision.

## VI.   CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 11th day of July, 2022.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**